# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and ) <br> JAMES S. JORGENSEN, ) <br> administrator of the Fund, ) <br> ) <br>     Interpleader Plaintiffs/Counter ) <br>     Defendants, ) <br> ) <br>     v. ) <br> ) <br> ANKA V. MISCEVIC and the ) <br> ESTATE OF M.M., ) <br> ) <br>     Interpleader Defendants. ) <br> - - - - - - - - - - - - - - - - - - - - - - - - - ) <br> ) <br> ANKA V. MISCEVIC, ) <br> ) <br>     Cross-Plaintiff/Defendant, ) <br> ) <br>     v. ) <br> ) <br> ESTATE OF M.M. and SNEZANA ) <br> JACIC KAPLAREVIC, ) <br> Guardian of the Estate, ) <br> ) <br> Cross-Defendant/Counterclaimants. ) | 16 C 5865 <br><br> Judge Charles Kocoras |

## **ORDER**

Now before the Court is Laborers' Pension Fund (the "Fund") and its administrator's interpleader action to determine the proper beneficiary of pension benefits earned by Zeljko Miscevic ("Zeljko"). Interpleader Defendant Anka Miscevic ("Anka") and Interpleader Defendant Estate of M.M. each filed individual cross-claims asserting themselves as the rightful beneficiaries. Both parties also filed

motions seeking a judgment on the pleadings in their favor.  For the following reasons, the Court grants the Estate of M.M.'s motion.

**STATEMENT**

On January 9, 2014, Anka murdered Zeljko at their home in Lombard, Illinois. Shortly thereafter, the State of Illinois charged Anka with first degree murder in criminal proceedings in the Eighteenth Judicial Circuit Court of DuPage County. *People of the State of Illinois v. Anka Miscevic*, 14 CF 58.  Stipulations entered at trial reflected that Anka confessed to stabbing Zeljko with a large kitchen knife in his sleep with the intention of killing him.  Additionally, Anka admitted to striking Zeljko in the head with a baseball bat to prevent him from calling the police.  At the conclusion of Anka's bench trial, the court found that the prosecution established beyond a reasonable doubt all the elements of first degree murder.  Specifically, the court held that Anka "intended to kill Zeljko without legal justification." *Id.* However, the court found Anka not guilty by reason of insanity.

**I.    Slayer Statute**

Under Illinois' "Slayer Statutue," 755 ILCS 5/2-6, a "person who intentionally and unjustifiably causes the death of another shall not receive any property, benefit, or other interest by reason of the death."  The law further states, "a determination under this [s]ection may be made by any court of competent jurisdiction separate and apart from any criminal proceeding arising from the death." *Id*.  The question for this Court is whether Anka "intentionally and unjustifiably" caused the death of Zeljko.

Anka argues that the Slayer Statute only prevents someone from benefiting from an intentional wrongful act, and because she was insane at the time of the killing, she could not possess the necessary intent. However, in considering whether Anka is a slayer under 755 ILCS 5/2-6, we do not consider criminal intent ("mens rea"), we consider civil intent. Civil intent only requires showing that a person intended his or her actions; there is no requirement that the person have knowledge that his or her actions were wrongful. *See Dougherty v. Cole*, 934 N.E.2d 16, 21–22 (2010).

Here, Anka confessed that she intended to kill her husband. She also confessed that she struck her husband in the skull with a bat to prevent him from calling for help. Similarly to the court in *Dougherty*, we find that even if Anka did not know her actions were criminal, the intent requirement under 755 ILCS 5/2-6 is satisfied. *Id.* at 22 (holding that when an individual was insane for criminal purposes but nevertheless cognizant he was killing a person, the Slayer Statute will prevent him from benefitting from his actions).

Anka places unfounded dependence on *Lincoln National Life Insurance Co. v. Johnson*, 669 F. Supp. 201, 203 (N.D. Ill. 1987). In that case, the Court's ruling relied on an outdated version of the Illinois' Slayer Statute. *Id.* at 202. In *Lincoln*, the victim was killed in 1982. In 1983, the Illinois legislature adopted the current version of the Slayer Statute. The Statute, prior to the 1983 amendment, required that the slayer be convicted of murder before being barred from inheriting property from the

3

deceased. *Id*. However, the 1983 amendment removed the murder conviction requirement and only required the intentional and unjustifiable causing of another's death. 755 ILCS 5/2-6. As the court noted in *Dougherty*, "this change significantly broadened the scope of . . . who fell under the statute from only those convicted of murder to anyone who intentionally and unjustifiably causes a death, without regard to whether a criminal conviction results therefrom." 934 N.E.2d at 20. Therefore, because Anka intentionally and unjustifiably caused the death of Zeljko, she is barred under Illinois' Slayer Statute from receiving Zeljko's pension benefits.

## II. ERISA Does Not Preempt The Illinois Slayer Statute

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq governs the administration of Zeljko's Plan. Congress passed ERISA to establish a comprehensive federal scheme for the protection of the participants and the beneficiaries of employee benefit plans. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987). ERISA's preemption clause specifies that the provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). There is no established rule for determining whether a state law "relates to," and is therefore preempted by ERISA, or is "too remote," and can therefore coexist with the federal scheme. However, "[a] state-law claim is not expressly preempted under § 1144(a) merely because it requires a cursory examination of ERISA plan provisions." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., Inc.*, 657 F.3d 496, 504 (7th Cir. 2011). While

4

there is limited case law discussing ERISA preemption when one spouse kills another spouse, federal district courts have held that ERISA does not preempt a state's slayer statute in such a situation. *See Admin. Comm. for the H.E.B. Inv. & Ret. Plan v. Harris*, 217 F. Supp. 2d 759, 761 (E.D. Tex. 2002); *New Orleans Electrical Pension Fund v. Newman*, 784 F. Supp. 1233 (E. D. La. 1992); *Mendez–Bellido v. Bd. of Trustees of Div*. 1181, 709 F. Supp. 329, 331 (E. D. N.Y. 1989). In light of this precedent, Anka attempts to support her notion that the Illinois Slayer Statute is preempted by ERISA by citing to *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001). However, her reliance on *Egelhoff* is misplaced. The Court stated:

> Respondents argue that if ERISA pre-empts this statute, then it also must pre-empt the various state statutes providing that a murdering heir is not entitled to receive property as a result of the killing. *See, e.g.*, Cal. Prob. Code Ann. §§ 250-259 (West 1991 and Supp. 2000); 755 Ill., Comp. Stat., ch. 755, § 5/2-6 (1999). In the ERISA context, these 'slayer' statutes could revoke the beneficiary status of someone who murdered a plan participant. *Those statutes are not before us, so we do not decide the issue.* We note, however, that the principle underlying the statutes-which have been adopted by nearly every State-is well established in the law and has a long historical pedigree predating ERISA. *See, e.g.*, *Riggs v. Palmer*, 115 N.Y. 506, 22 N.E. 188 (1889). And because the statutes are more or less uniform nationwide, their interference with the aims of ERISA is at least debatable.

*Id.* at 152 (emphasis added).

Even though the Court expressly noted that its ruling was not in regards to slayer statutes, Anka maintains that a finding of preemption is "inevitable based on the rationale behind the Court's determination" in *Egelhoff*. To support this, Anka cites to *Ahmed v. Ahmed*, 158 Ohio App. 3d 527 (Ohio App. 2004) and *Henrickx v. Sanelle*,

5

281 Or. App 869, 875–77 (2016), both state court cases where the courts found their state slayer statues were preempted by ERISA. These cases are not binding on this Court. Since Anka has cited no binding case law showing the Illinois Slayer Statute is preempted by ERISA, we cannot conclude ERISA preempts the Illinois Slayer Statute.

However, even if ERISA did preempt the Illinois' Slayer Statute, federal common law would prohibit Anka from benefiting because of her wrongdoing. None of ERISA's provisions address the distribution of benefits to a beneficiary responsible for killing the plan participant. 29 U.S.C. § 1001. When no controlling plan or statutory provision exists, federal common law decides which of the competing claimants receives the insurance proceeds. *See Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 647 (7th Cir. 1993); *Manning v. Hayes*, 212 F.3d 866, 870–72 (5th Cir. 2000) (holding that when a beneficiary and a non-beneficiary of ERISA benefits have competing claims, district courts should employ federal common law to resolve the issue). The federal common law regarding slayers derives from the common law principle that no person should be permitted to profit from his or her own wrong. *See Prudential Ins. Co. of Am. v. Athmer*, 178 F.3d 473, 475 (7th Cir. 1999); *Prudential Life Ins. Co. v. Tull*, 690 F.2d 848, 849 (4th Cir. 1982) (citing *Shoemaker v. Shoemaker*, 263 F.2d 931, 932 (6th Cir. 1959). Hence, in deciding who is entitled to ERISA benefits between the Estate of M.M. and Anka, we find federal common law grants the ERISA benefits to the Estate of M.M.

For these reasons, we grant the Estate of M.M's motion for judgment on the pleadings. It is so ordered.

Dated: 3/24/2017

Charles P. Kocoras
United States District Judge